Good morning, Your Honors. If it may please the Court, Wayne Fricke on behalf of the appellants, Barker, et al. If I could save two minutes for rebuttal, I'd appreciate it if I stayed within my time limits here. The situation here, Your Honor, involves a tavern in the small town of Ruston, which is located in Pierce County, run by a Korean woman over the last several years after her husband passed away. And after she took over the establishment beginning in the early part of 2004, approximately, the establishment has been subjected to police activity through basically the council and then mayor, in our view, based on the evidence, attempting to run her out of business. And this harassment, which is how we characterize it, involved people, people being police officers, coming into the establishment at all times, many times during a shift, not really typically searching, but just standing there and intimidating the patrons in the tavern. They do this, as one officer testified, who is a named defendant in the case, he'd walk in there and he would just sit there and hang out. They would check on people's IDs, check licenses in the parking lot. Bartender Bone, in his declaration, testified, even at times, making sexual advances against some of the female customers within the bar. The town moved for summary judgment along with the officers, and that was granted by Judge Settle down in Tacoma a couple years ago. Counsel, I take it that one of your claims is that the reason for these acts was your client's Korean ancestry, but I didn't see evidence that there were other comparable bars with other comparable levels of noise that were owned by non-Koreans that were treated differently. The only evidence there is, Your Honor, and admittedly that part of the claim is thin, but there is evidence, at least through Bartender Bone, who indicated that, and he had been at this establishment for a lengthy period of time, including when it was run by her husband, and he indicated in his declaration that as soon as she took over, that's when the patrols, if you will, picked up. Well, the difficulty is that in order to show any sort of discriminatory enforcement of any sort, there has to be someone similarly situated to compare it to, and that seems missing here. We don't know what other bars there are in Ruston and exactly what people do there and how noisy they are or any of those things. And I don't disagree with that, Your Honor, and again, I say that's probably the weakest of the claims. What's your strongest claim, in your view? The strongest claim is the Fourth Amendment to be not subjected to unreasonable searches and seizures and harassment. What was seized and what was searched? Well, the search is just coming in, and I guess I'm given a generous characterization, and this Court on a couple of occasions has upheld cases. Benini is one that's been discussed, the counsel's discussed, the Judge Settle discussed, but that case involved a Fourth Amendment claim that was upheld by the Ninth Circuit. Let me go right to that because that's my biggest concern. In fact, a moment ago you used the words not necessarily searching, and it seems to me that's a major distinction between the case before this Court and the Benigni case, where indeed there the officers went behind the bar and actually searched in drawers. So clearly there was a search in that case, and under that very deferential review by the court there, the court said at least that theory could go to the jury, but I don't see any search in this case. But that wasn't the only thing they relied upon in that case, and certainly they'd bring out on occasions they would search, but what they really emphasized, at least my opinion in reading the case, is that, which is similar to this case, is the police, during their shifts, would come five or six times during the evenings. Sometimes they would go behind the bar. Sometimes they would search the drawers, and they would walk throughout the bar and card people. You're saying in this case there's evidence they went behind the bar? No, I'm saying in that case, in adding to what the court relied upon. In this case, we don't have the evidence they actually went behind the bar, but they went into the bar. They walked around, and that's through police officer's testimony. They'd go in there and sit down and just hang out, as one officer testified, for periods of a half hour or so. And there is, and obviously we have to acknowledge there's a statute that allows peace officers to go into licensed establishments, which this is, but they don't have the right to go in there to harass and just hang out and intimidate people. There was an intervening event in all of this, wasn't there? The no smoking in bars? That related to this case. Didn't that push the patrons outside? There's definitely a no smoking law in this. And didn't that increase the noise level? Well, I don't know that we have that as part of the evidence, but certainly it's conceivable that if you go- And the individual who lived across the street- Was the mayor. Who became mayor- Right. Was bothered by the noise level. He's indicated he was bothered by the noise level. The retired chief of police said he really wanted to run this place out of business, and that was his motive for making these calls. But that law enforcement officer resisted those entreaties, correct? That chief- Because there wasn't a noise ordinance yet. It was passed later, right? No, it was a noise ordinance that existed at the time, but he felt that they didn't violate the noise ordinance. He didn't feel he was getting enough attention as a private citizen, so he ran for mayor. He actually was on the council at that time, and so he was not just a private citizen. Then he ran for mayor, and that's when the chief of police retired at that time. But he felt his goal was- And when he was chief of police, that overlaps this complaint here. If someone is violating the law, the motive of the person who stops them or deals with them doesn't prevent the activity from being illegal. The Wren case established that if you have a taillight that's out, you can be stopped, even if the police officer stopping you hates your guts and is really happy to be able to stop you. And so I think the other concern I have is I don't see a demonstration that there was no violation of the noise ordinance. In other words, regardless of the motive for enforcing the noise ordinance, if, in fact, it was violated, then it can be enforced. Well, there's no evidence that there was a violation. There's evidence that the officer wrote a citation not even following the rule of law in that municipal code because to violate the noise ordinance in the city of Ruston, first of all, there's got to be a complaint, which we'll give them that. But secondly, the officer has to go in, talk to either the bartender or the manager or whatever, whoever's on duty, and give them an opportunity to turn the noise down. It's only a violation once they give them that opportunity and nothing changes. And that didn't happen in this case. And the one time that there's actually a citation for violating that ordinance. And so that's what makes this a different situation. And in that regard, it's similar to the other Ninth Circuit cases out there, where there's a dispute as to what actually happened. And I think it was Santa Ana case where the police officers testified that they had an emergency call. There was evidence that there never was an emergency call in the Ninth Circuit upheld. Counsel, did you want to save your last minute for about a minute and 13 seconds? I do. Thank you, Your Honor. Thank you. We'll hear from Mr. McMahon. Good morning, Your Honor. May it please the Court. Patrick McMahon. I represent the town of Ruston and the individual defendants named in the litigation. The inquiries from the bench, Your Honor, I think are directly on point in that does certain police activity that is required and mandated by state statute for the public welfare in enforcing the liquor laws in this state What state statute requires police officers to go into a bar and sit there for half an hour? Well, the specific statute is RCW 66-28090, parents one, Your Honor. And it requires that all licensed premises that sell alcohol are subject to inspection by liquor enforcement officers, inspector, or any peace officer at all times. So under the Fourth Amendment If it is in that statute, it's okay for a police officer to go into a bar and sit for half an hour and do nothing? It is. I would submit that it is perfectly all right to do that. Is that your interpretation or is that what the ordinance says, the statute says? That's what a number of law enforcement officers do around the state, not necessarily for purposes suggested by opposing counsel, but for purposes that they are there to make sure that there isn't any illegal activity going on in a liquor establishment, to make certain that people aren't being over served. But oftentimes these officers are met by the crowds as being friendly. They're not there in an intimidation status. And I would suggest, Your Honor, that one of the key issues in this case was the lack of evidence that the officers did anything that would come anywhere remotely close to being violative of any of the Fourth or Fourteenth Amendment rights that they're complaining of. They were simply allegations. Is there any evidence about whether other bars in the town had similar acts occurring where police officers would come in and hang out waiting to see if there was over serving or whatever else? That's an excellent point, Your Honor. I'm asking a question. Is there evidence of other bars one way or another? No. There was simply the declaration of the bartender who said that he had worked at other establishments, not necessarily located in the town of Ruston but in the general area, and he said that they were treated differently. But there was no specific evidence that satisfied the district court that was beyond pure conjecture or speculation that somehow Ruston was being treated differently. Because those were unidentified bars and presumably another time period because he was only working at one bar at a time? Is that? That's correct. Different bars. No statistics of how often the officers would visit, how many citations may have been issued for liquor violation. There was nothing to compare to show that there was any sort of disparate treatment between the two. He had been a bartender at other locations, and he believed that the treatment was different, correct? Correct. He did believe it was different, but the court said, the district court said, and I believe in a way ruling on our motion to strike the evidence as being speculative, that simply coming up with that generalized statement is not satisfactory. Did the district court grant that motion? Pardon me? Did the district court grant that motion? The district court in a footnote, Your Honor, said we're not addressing the motion to strike the evidence unless we need to. So the answer to my question is no. Correct. Thank you. Is it your position that that statute renders lawful some conduct by the police here, that but for the statute would be unlawful and would allow the plaintiff to make the arguments they're making?  Your Honor, I think that you still have a right for a generalized police power, even if it isn't statutorily codified to be in and established to make sure that liquor laws are adhered to and that people aren't drinking excessively and getting in automobiles and driving, public safety and welfare. So in the absence, Your Honors, of any Fourth Amendment violation, that there was no reasonable expectation of privacy in the open area of the bar, and I don't know if the court had had the opportunity to read the club level versus city of Wenatchee case, but in that case there was even more specific evidence of police officers going into areas where there may have been more of an expectation of privacy, more so than in this particular case. However, the court again found that there's just no expectation of privacy in a public establishment or a public bar, and I was trying to think of a situation where that would be violative of the Constitution, and I would think if someone, a bar owner, had a residence, for example, on top of the establishment they ran and that was their personal residence, police doing bar checks somehow wandered up into a personal residence trying to use the auspice of doing police checks, that could be an example of being violative of the Fourth Amendment. But here there's just no evidence that suggests that whatsoever. Am I correct about the non-smoking ordinance or statute? Correct about the what, Your Honor? I'm sorry. Am I correct about the impact of the no smoking in bars ordinance or statute? I'm not sure what your interpretation of that was. Well, wasn't there a point in time when it was perfectly lawful to smoke in a bar, either in this town or in the State of Washington? I believe that. And didn't the law change? Regarding that issue I don't know specifically, but I imagine it has. Okay. All right. Thank you. So in addressing the second claim, violation of equal protection claim, I think, Judge Graber, I addressed your issue that there wasn't any evidence that other liquor establishments were somehow treated disproportionately or more favorably than the Unicorn Tavern. And absent that evidence and the fact that the bartender was making simply a generalized statement that it was different, the court found that there wasn't any discriminatory motivation, and I believe the evidence just doesn't hold muster to survive an equal protection claim. And finally, the due process claim under the 14th Amendment, there was very brief comment that Ms. Barker was of Korean ancestry, but there is absolutely no evidence in the record whatsoever that that had any impact or played any part into any of the allegations submitted that the police department did something improper. There also is no evidence that she had an inability to pursue an occupation within the liquor industry, and it's important, I believe, for the court to note that under those lines of cases, if a tavern does go out of business, unless there's some evidence that you've lost your license to operate a liquor establishment in the state of Washington based on improper police activity, that would be violative of the due process claim, but there's no evidence of that here as well. So all in all, I believe that although the bar owner may not have been pleased that police officers did walkthroughs through the bar, it does not rise in any way, shape, or form to the level of violating the Constitution. And as to the individual officers, our position, and I believe the district court accepted that position, is that qualified immunity would apply to the individuals, and if it didn't, since there was no constitutional violation, there simply can be no Monell violation as well. There was no custom or practice that was established to violate their rights. So with that, Your Honor, I would respectfully request that you affirm the lower court's granting of summary judgment. If there are no further questions, I'll... I don't believe that there are. Thank you. Thank you. Mr. Frakey, you have a little bit of time remaining. I just want to point out, Your Honor, Benigni also involved a situation where the State of California had the ability to regulate the bars and walk in there. That statute that was a state statute there is almost identical to what exists in this case. Judge Settle, when he granted the motion of summary judgment, basically stated because, and I'll quote, she has not shown she had a legitimate expectation of privacy, the court grants the defendant's motion. And clearly she has an expectation of privacy, at least to a certain extent. It may not be as great as one's home, but it does exist. And had it not existed, the cases from this circuit in Benigni and Freeman would have been decided differently. They can't use this statute just to go in there to do anything they want, which basically is what they're doing under the guise of this statute. It doesn't abrogate the constitutional rights to be free from this type of behavior. And the granting of a summary judgment we believe is error, and I'm asking the court to reverse it at this time. Thank you, counsel. Thank you, Your Honor. We appreciate very much the arguments of both counsel, and the case is submitted.
judges: Hawkins, Graber, Teilborg